---

### *In re* ROBB.

*(Circuit Court, D. California.   January 19, 1884.)*

1. FUGITIVES FROM JUSTICE ARRESTED AND RETURNED UNDER LAWS OF THE UNITED STATES.

    The governor of a state, in issuing a warrant for the arrest of a fugitive from justice, the officer who makes the arrest, and the party commissioned to receive the fugitive and deliver him to the authorities of the state in which the offense is charged to have been committed, in pursuance of the provisions of sections 5278 and 5279 of the Revised Statutes, act under the authority of the laws of the United States, and *pro hac vice* are officers or agents of the United States.

2. WRIT OF HABEAS CORPUS—JURISDICTION.

    Where a petition for a writ of *habeas corpus* presented to a state judge or court by a party in the custody of one claiming, in good faith, to be authorized to deliver him to the authorities of another state, as a fugitive from justice, in pursuance of the provisions of said sections, shows upon its face that the petitioner is so held in custody under such claim made in good faith, the state judge or court has no jurisdiction to issue the writ. The jurisdiction in such case is exclusively in the courts of the United States.

3. SAME—DUTY OF CUSTODIAN.

    Where a writ of *habeas corpus* has been issued by a state judge or court, and been served on the party having the custody of such alleged fugitive, it is the duty of such custodian to make full return to the writ as to the authority under which he holds the prisoner, and to exhibit to the court the original papers evidencing his authority, and respectfully decline to produce the body of the prisoner; and if it appears from said return, or said petition and return, that

the prisoner is claimed to be held in good faith, in pursuance of the provisions of said statute, the judge or court issuing the writ has no jurisdiction or authority to proceed further, and no jurisdiction or authority to compel the production of the body of the prisoner, or to commit the party holding him for contempt in thus respectfully declining to produce the prisoner.

4. SAME—EFFECT OF PRODUCTION OF PRISONER.

The effect of the production of the prisoner would be to place him in the physical control of the court, and to deprive the agent of all power to execute the superior commands of the laws of the United States, to which he owes obedience.

Application for a Writ of *Habeas Corpus.* The opinion states the facts. Before SAWYER and SABIN, JJ.

*Alfred Clarke,* for the petitioner.

*J. D. Sullivan,* Dist. Atty. for the city and county of San Francisco, for sheriff.

*W. M. Fitzmaurice,* of counsel.

SAWYER, J. W. L. Robb filed his petition in the circuit court for a writ of *habeas corpus,* in which he states:

"That he is unlawfully imprisoned, detained, confined, and restrained of his liberty by P. Connolly, sheriff of the city and county of San Francisco, at the city and county of San Francisco, in the state of California; that the said imprisonment, detention, confinement, and restraint are illegal; and that the illegality thereof consists in this, to-wit, that petitioner is the duly appointed agent of the state of Oregon to convey to said state Charles H. Bayley, a fugitive from justice from said state, who is in the custody of this petitioner under a warrant issued by the governor of California, a copy of which warrant is hereto annexed and made a part of this petition; that on the twenty-first day of November, 1883, this petitioner was served with a writ of *habeas corpus* from the superior court of the city and county of San Francisco, commanding him to produce in said court said Charles H. Bayley; that petitioner respectfully informed said court by his return that he held said Bayley under the authority of the United States, and refused to produce said Bayley, and said superior court committed petitioner therefor for an alleged contempt of its authority. Wherefore, petitioner is in custody for an act done in executing a law of the United States, and for refusing to do an act contrary to a law of the United States."

The warrant annexed to the petition and made a part thereof is the same, a copy of which, with the return thereon, is hereinafter set out in the commitment as a part of the judgment for contempt.

A writ of *habeas corpus* having been issued according to the prayer and duly served, P. Connolly, sheriff, on January 11, 1884, made return as follows:

"Now comes P. Connolly and makes this his return to the within writ, and shows that he holds the within named W. L. Robb under a commitment, a copy of which is hereto annexed and made a part hereof.

"P. CONNOLLY,
"Sheriff City and County of San Francisco.
"By M. F. CUMMINGS, Under Sheriff.
" *Dated January,* 11, *A. D.* 1884."

The following is a copy of the commitment annexed to the return:

"In the superior court of the city and county of San Francisco, state of California, Department No. 1, Wednesday, November the 21st, A. D. 1883.

Present, Hon. T. K. Wilson, judge. In the matter of the application of Charles H. Bayley for a writ of *habeas corpus.*

"The application of Charles H. Bayley for a writ of *habeas corpus* coming on regularly to be heard, and it appearing to my satisfaction that a writ of *habeas corpus* was duly and regularly issued, directed to and served upon one W. L. Robb, commanding him, the said W. L. Robb, to have and produce before me, the undersigned, one of the judges of the superior court of the city and county of San Francisco, at the court-room of Department No. 1 of said court, at the hour of half past one o'clock P. M. of said day, the body of Charles H. Bayley, and at the time and place last aforesaid.

"The said W. L. Robb appearing by his counsel and submitting his return to said writ, *from which it appears that the said W. L. Robb holds the said Charles H. Bayley under the authority of the United States under and by virtue of the following warrant:*

"'*State of California, executive department.* [Vignette.] The people of the state of California, to any sheriff, constable, marshal, or policeman of this state, greeting:

"'Whereas, it has been represented to me by the governor of the state of Oregon that C. H. Bayley stands charged with the crime of embezzlement, committed in the county of Clatsop, in said state, and that he has fled from the justice of that state, and has taken refuge in the state of California; and the said governor of the state of Oregon having, in pursuance of the constitution and laws of the United States, demanded of me that I shall cause the said C. H. Bayley to be arrested and delivered to W. L. Robb, who is authorized to receive him into his custody and convey him back to the state of Oregon; and, whereas, the said representation and demand is accompanied by a certified copy of the information filed in the office of the justice of the peace of the precinct of Astoria, Clatsop county, state of Oregon, whereby the said C. H. Bayley stands charged with said crime and with having fled from said state and taken refuge in the state of California, which is certified by the governer of the state of Oregon to be authentic; you are, therefore, required to arrest and secure the said C. H. Bayley wherever he may be found within this state, and to deliver him into the custody of the said W. L. Robb, to be taken back to the state from which he fled, pursuant to the said requisition, he, the said W. L. Robb, defraying all costs and expenses incurred in the arrest and securing of said fugitive. You will make return to this department of the manner in which this warrant has been executed.

"'In witness whereof I have hereunto set my hand and caused the great seal of the state to be affixed this the twentieth day of November, in the year of our Lord one thousand eight hundred and eighty-three.

"'[Seal]                                   GEORGE STONEMAN,
"'Governor of the State of California.

"'By the governor:
"'THOS. L. THOMPSON, Secretary of State.'

"'SAN FRANCISCO, CAL.

"'I hereby certify that I have this day arrested the within-named C. H. Bayley, and delivered him to W. L. Robb, as herein demanded.
"'*November* 20, 1883.                     P. CROWLEY, Chief of Police.'

"And the said W. L. Robb has in his custody and possession the body of the said Charles H. Bayley, and is able to and can produce the said Charles H. Bayley before me at the time and place specified in and in accordance with the directions contained in said writ; and it further appearing that the said W. L. Robb willfully neglects and refuses to obey said writ of *habeas corpus* or to have or produce the said Charles H. Bayley before the undersigned as above mentioned, and that no good or sufficient cause has been shown or ex-

ists for said refusal, it is therefore ordered and adjudged that the said W. L. Robb is guilty of contempt of this court, in refusing to obey said writ of *habeas corpus*, and refusing to have and produce the body of Charles H. Bayley before me at the time and place specified in said writ; and further ordered that the sheriff of the city and county of San Francisco do forthwith arrest the said W. L. Robb, and confine him in the county jail of the city and county aforesaid until he, the said W. L. Robb, obeys said writ and produces the body of the said Charles H. Bayley before me, or until he be legally discharged.

"Given under my hand this twenty-first day of November, 1883.

"T. K. WILSON,

"Judge of Superior Court of the City and County of San Francisco, Cal."

At the hearing, a copy of the record of proceedings in the superior court, in which the judgment and commitment for contempt were had, was put in evidence, and it was agreed by counsel that this was the authority under which petitioner, Robb, is restrained of his liberty.

The record shows:

(1) A petition to T. K. Wilson, judge of the superior court of the city and county of San Francisco, for a writ of *habeas corpus* by Charles H. Bayley, in which he alleges:

"That he is unlawfully imprisoned, detained, confined, and restrained of his liberty by W. L. Robb, at the old city hall, in the city and county of San Francisco, in the state of California. That the said imprisonment, detention, confinement, and restraint are illegal; and that the illegality thereof consists in this, to-wit, that petitioner *is held under a warrant of arrest, a copy of which is hereto annexed and made a part hereof*. That said warrant is issued without authority of law and against the law in this, that no copy of an indictment found, or affidavit made, before a magistrate, charging petitioner with any crime, has been produced to the governor of California."

The warrant of arrest issued by the governor of California, annexed to and made a part of the petition, is the same warrant hereinbefore set out as a part of the judgment and commitment for contempt, and the return of P. Crowley, chief of police, indorsed thereon, and need not be repeated.

(2) A writ of *habeas corpus*, in the usual form, addressed to W. L. Robb, requiring him to produce the body of said Bayley, etc.

(3) The return to the writ made by said Robb, petitioner herein, which is as follows:

"In the superior court of the city and county of San Francisco, state of California. *Ex parte* Charles H. Bayley. *Habeas corpus.*

"Now comes W. L. Robb, and makes this his return to the annexed writ, and shows that he holds the within-named prisoner under the authority of the United States, as will more fully appear on inspection of the warrant of the governor of California and a commission from the governor of Oregon, a copy of which is hereto annexed and made a part hereof, and the originals produced. Respondent respectfully refuses to produce said C. H. Bayley, on the ground that under the laws of the United States he ought not to produce said prisoner, because the honorable superior court has no power or authority to proceed further in the premises. W. L. ROBB.

"Subscribed and sworn to before me this twenty-first day of November, 1883. J. F. CARPENTER, Deputy County Clerk."

The warrant of the governor of California, annexed to said return and made a part thereof, is the same hereinbefore set out as a part of the judgment and commitment for contempt, and the return of P. Crowley, chief of police, indorsed thereon. The commission of the governor of Oregon, also annexed to said return and made a part thereof, is as follows:

"State of Oregon. [Vignette.] Executive department. To all to whom these presents shall come:

"Know ye, that I have authorized and empowered, and by these presents do authorize and empower, Walter L. Robb to take and receive from the proper authorities of the state of California one C. H. Bayley, fugitive from justice, and convey him to the state of Oregon, there to be dealt with according to law.

"In witness whereof, I have hereunto set my hand and affixed the great seal of the state, at the city of Salem, this fifteenth day of November, in the year of our Lord one thousand eight hundred and eighty-three.

"[Seal]            (Signed)                      Z. Z. MOODY,
                                      "Governor of the State of Oregon.

"By the governor:
       "R. P. EARHART, Secretary of State."

The original of said commission of the governor of Oregon under the seal of the state of Oregon, and the original of the said warrant of the governor of California under the seal of the state of California, were also produced and exhibited to the court at the time of making said return.

The constitution of the United States provides that "a person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime." Article 4, § 2.

The last clause of section 8 of article 1 confers upon congress power "to make all laws which shall be necessary and proper for carrying into execution   *   *   *   all   *   *   *   powers vested by this constitution in the government of the United States." And article 11 provides that "this constitution and the laws of the United States which shall be made in pursuance thereof   *   *   *   shall be the supreme law of the land; and judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding." Thus, any laws passed by congress under those constitutional provisions for the arrest of fugitives from justice found in any state, and their delivery to the state from which they fled, are a part of the supreme law of the land, to which all state laws upon the subject must be subordinate. This power, like the power conferred in the same section to return fugitives from labor, the power to regulate foreign and interstate commerce, to declare war, raise armies, provide for a navy, make peace, etc., it was thought ought not to be reposed in the states. State jealousies, and

diverse state interests and policies, might prevent the return of fugitives from justice and labor, and to guard against inconvenience in these matters, the power was conferred upon the general government over these subjects, and it is supreme. So, also, the constitution provided for courts to administer the laws of the United States. In pursuance of the provisions cited relating to the return of fugitives from justice and labor, congress, in 1793, passed an act for the return of both classes of fugitives. 1 St. 302. Sections 1 and 2 of that act, relating to fugitives from justice, have been carried into the Revised Statutes of the United States, and constitute sections 5278 and 5279, which, so far as applicable to this case, read as follows:

"Sec. 5278. Whenever the executive authority of any state or territory demands any person, as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found, or an affidavit made before a magistate of any state or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear.

"Sec. 5279. Any agent so appointed who receives the fugitive into his custody *shall be empowered to transport him to the state or territory* from which he has fled. And every person who, by force, sets at liberty or rescues the fugitive from such agent, while so transporting him, shall be fined not more than five hundred dollars, or imprisoned not more than one year."

When the governor of a state, acting under this statute, upon the demand of the authorities of another state, issues his warrant for the arrest of a party charged with a crime, and that party is arrested by any proper officer, and delivered over to the party empowered by the state in which the offense was committed, to be carried to that state and delivered to its proper authorities, we have no doubt that the governor issuing the warrant, the officer executing it, and the party to whom he is delivered, are acting by virtue and under the authority of the act of congress, and no other, and *pro hac vice* are officers or agents of the United States. *Ex parte Smith*, 3 McLean, 129; *Prigg's Case*, 16 Pet. 539. From the time of arrest till he is delivered to the authorities of the state demanding his surrender, the party is in the custody of the law,—and that law a law of the United States, and the supreme law of the land. In this case Bayley had been arrested upon a warrant issued by the governor of California, on a demand by the governor of Oregon, and delivered into the custody of the petitioner, Robb, who was duly commissioned and authorized by the governor of Oregon to receive him and convey him to Oregon, which duty he was engaged in performing, in pursuance of the provisions of the act of congress, when he was served with the writ of

*habeas corpus* from the superior court, to which he made the return hereinbefore set out, stating that he held Bayley for the purpose of conveying him to Orégon, under and in pursuance of the laws of the United States, by virtue of the commission from the governor of Oregon, and the warrant of arrest of the governor of California, and arrest under it, annexing thereto copies of said documents, and exhibiting the originals, and respectfully declined to produce the body of Bayley on the expressed ground that, it appearing to the court that Bayley was in custody under the laws of the United States, the court had no jurisdiction to proceed further, or to require him to produce the body of said prisoner.

The court took a different view on this point, adjudged petitioner to be guilty of contempt in declining to produce the body of Bayley, and to be imprisoned until he should comply with the commands of the writ in this particular. If the court, after being informed of the cause of restraint, had jurisdiction and authority to proceed further, and compel the production of the body of Bayley, notwithstanding the facts shown, then the judgment for contempt is lawful, and petitioner must be remanded; but if it had no authority to proceed and compel the production of the body of Bayley, then it had no power to punish petitioner for contempt, and he could not be in contempt in not producing him, and the authority of the court to proceed is the question to be determined. As we understand the decisions, this very question has been distinctly determined by the supreme court of the United States, under circumstances that compelled the most deliberate and mature consideration, in the cases of *Ableman* v. *Booth* and *U. S.* v. *Booth*, 21 How. 507. In the first case, Booth had been arrested for an offense against the laws of the United States, and held to answer by a court commissioner, and committed to the custody of the marshal of the district. A justice of the supreme court of Wisconsin discharged Booth from custody on *habeas corpus*, on the ground that the act under which Booth was held was unconstitutional and void, and his action was affirmed by the state supreme court. Booth was then indicted and tried, and convicted in the United States district court for the district of Wisconsin, and sentenced to imprisonment, whereupon the same justice of the supreme court of the state discharged him again on *habeas corpus*, on the same grounds as before; which action was also affirmed by the supreme court of the state. This action of the justice of the supreme court, and of the supreme court of the state, was reversed by the supreme court of the United States, upon the ground that the court and justice were wholly without jurisdiction to consider these matters. So earnest was the supreme court of Wisconsin in its determination to maintain its authority that it even disobeyed the writ of the United States supreme court, commanding it to send up its record, and peremptorily ordered its clerk not to send a transcript of the record, which order was obeyed;

and the cases were heard upon copies of the records, permitted by the supreme court to be filed, upon affidavits stating the facts.

In discussing the powers of the state and national courts, the court, speaking by its chief justice, says:

"If the judicial power exercised in this instance has been reserved to the states, no offense against the laws of the United States can be punished by their own courts without the permission and according to the judgment of the courts of the state in which the party happened to be imprisoned; for if the supreme court of Wisconsin possessed the power it has exercised in relation to offenses against the act of congress in question, it necessarily follows that they must have the same judicial authority in relation to any other law of the United States; and, consequently, their supervising and controlling power would embrace the whole criminal code of the United States, and extend to offenses against our revenue laws, or any other law intended to guard the different departments of the general government from fraud or violence. And it would embrace all crimes, from the highest to the lowest, including felonies, which are punished with death, as well as misdemeanors, which are punished by imprisonment. And moreover, if the power is possessed by the supreme court of the state of Wisconsin, it must belong equally to every other state in the Union, when the prisoner is within its territorial limits; and it is very certain that the state courts would not always agree in opinion; and it would often happen that an act which was admitted to be an offense, and justly punished, in one state, would be regarded as innocent, and indeed as praiseworthy, in another.

"It would seem to be hardly necessary to do more than state the result to which these decisions of the state courts must inevitably lead. It is, of itself, a sufficient and conclusive answer; for no one will suppose that a government which has now lasted nearly seventy years, enforcing its laws by its *own tribunals,* and preserving the union of the states, could have lasted a single year, or fulfilled the high trusts committed to it, if offenses against its laws could not have been punished without the consent of the state in which the culprit was found.

"The judges of the supreme court of Wisconsin do not distinctly state from what source they suppose they have derived this judicial power. There can be no such thing as judicial authority, unless it is conferred by a government or sovereignty; and if the judges and courts of Wisconsin possess the jurisdiction they claim, they must derive it either from the United States or the state. It certainly has not been conferred on them by the United States; and it is equally clear it was not in the power of the state to confer it, even if it had attempted to do so; for no state can authorize one of its judges, or courts, to exercise judicial power by *habeas corpus,* or otherwise, within the jurisdiction of another and independent government. And although the state of Wisconsin is sovereign within its territorial limits to a certain extent, yet that sovereignty is limited and restricted by the constitution of the United States. And the powers of the general government and of the state, although both exist and are exercised within the same territorial limits, are yet separate and distinct sovereignties, acting separately and independently of each other, within their respective spheres. And the sphere of action appropriated to the United States is far beyond the reach of the judicial process issued by a state judge or a state court, as if the line of division was traced by landmarks and monuments visible to the eye. And the state of Wisconsin had no more power to authorize these proceedings of its judges and courts than it would have had if the prisoner had been confined in Michigan, or in any other state of the Union, for an offense against the laws of the state in which he was imprisoned." 21 How. 514.

Again:

"Questions of this kind must always depend upon the constitution and laws of the United States, and not of a state. The constitution was not formed merely to guard the states against danger from foreign nations, but mainly to secure union and harmony at home; for if this object could be attained, there would be but little danger from abroad, and to accomplish this purpose it was felt by the statesmen who framed the constitution, and by the people who adopted it, that it was necessary that many of the rights of sovereignty, which the states then possessed, should be ceded to the general government, and that, in the sphere of action assigned to it, it should be supreme and strong enough to execute its *own laws by its own tribunals,* without interruption from a state or from state authorities. And it was evident that anything short of this would be inadequate to the main objects for which the government was established; and that local interest, local passions or prejudices, incited and fostered by individuals for sinister purposes, would lead to acts of aggression and injustice, by one state upon the rights of another, which would ultimately terminate in violence and force, unless there was a common arbiter between them, armed with power enough to protect and guard the rights of all, by appropriate laws, to be carried into execution peacefully by its judicial tribunals." 21 How. 516, 517.

After showing the relation of the state and national courts to each other, and to the laws of the United States passed within the scope of the powers of the national government, the court, in language so clear and precise that it can not well be misunderstood, lays down the rule directly applicable to this case, as follows:

"We do not question the authority of the state court, or judge, who is authorized by the laws of the state to issue the writ of *habeas corpus,* to issue it in any case where the party is imprisoned within its territorial limits, *provided it does not appear, when the application is made, that the person imprisoned is in custody under authority of the United States.* The court, or judge, has a right to inquire, in this mode of proceeding, for what cause, and and by what authority, the prisoner is confined within the territorial limits of the state sovereignty. And it is the duty of the marshal, or *other person* having the custody of the prisoner, to make known to the judge or court, by a proper return, the authority by which he holds him in custody. This right to inquire by process of *habeas corpus,* and the duty of the officer to make a return, grows, necessarily, out of the complex character of our government, and the existence of two distinct and separate sovereignties within the same territorial space, each of them restricted in its powers, and each, within its sphere of action, prescribed by the constitution of the United States, independent of the other. *But, after the return is made, and the state judge or court judicially apprised that the party is in custody under the authority of the United States, they can proceed no further. They then know that the prisoner is within the dominion and jurisdiction of another government, and that neither the writ of habeas corpus, nor any other process issued under state authority, can pass over the line of division between the two sovereignties. He is then within the dominion and exclusive jurisdiction of the United States.* If he has committed an offense against their laws, their tribunals alone can punish him. *If he is wrongfully imprisoned, their judicial tribunals can release him and afford him redress.* And although, as we have said, it is the duty of the marshal, or other person holding him, to make known, by a proper return, the authority under which he detains him, *it is at the same time imperatively his duty to obey the process of the United States, to hold the prisoner in custody under it, and to refuse obedience to*

*the mandate or process of any other government. And, consequently, it is his duty not to take the prisoner, nor suffer him to be taken, before a state judge or court upon a habeas corpus issued under state authority. No state judge or court after they are judicially informed that the party is imprisoned under the authority of the United States, has any right to interfere with him, or to require him to be brought before them.* And if the authority of a state, in the form of judicial process, or otherwise, should attempt to control the marshal, or *other authorized officer or agent* of the United States, in any respect, in the custody of his prisoner, *it would be his duty to resist it, and to call to his aid any force that might be necessary to maintain the authority of law against illegal interference. No judicial process, whatever form it may assume,* can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; *and an attempt to enforce it beyond these boundaries is nothing less than lawless violence.*" 21 How. 523.

This decision was fully affirmed nearly 25 years afterwards, in *Tarble's Case,* 13 Wall. 397. Tarble had enlisted in the United States army, deserted, and been arrested, and he was restrained of his liberty on that ground, by Lieut. Stone, in charge of the station. A writ of *habeas corpus* having been issued by a state commissioner having jurisdiction to issue such writs, and served, Lieut. Stone made return that the petitioner had enlisted, deserted, and been captured, and he claimed to hold him rightfully as a soldier under the laws of the United States. It was replied that he was a minor under 18 years of age; that he had been inveigled into enlisting without the consent of his father, and that the enlistment was void, on this and other grounds set out, and it was claimed that the petitioner was unlawfully restrained of his liberty. The commissioner took testimony, heard the case, and discharged him. The proceedings of the commissioner were affirmed by the supreme court of Wisconsin. The judgment of the state supreme court was subsequently reversed by the supreme court of the United States, after an elaborate review of the questions involved, not on the ground that the state commissioner and court erred on the facts, or the unlawfulness of the imprisonment, but upon the ground that they had no right, or jurisdiction, to examine or determine the question as to the lawfulness of the imprisonment at all, after the fact was brought to the attention of the court issuing the writ that the officer, in good faith, claimed to hold him under authority of the laws of the United States —that upon these facts appearing the jurisdiction was ousted. Said the court upon this question:

"State judges and state courts, authorized by laws of their states to issue writs of *habeas corpus,* have, undoubtedly, a right to issue the writ in any case where a party is alleged to be illegally confined within their limits, *unless it appear upon his application that he is confined under the authority, or claim and color of the authority, of the United States, by an officer of that government. If such fact appear upon the application, the writ should be refused. If it do not appear, the judge or court issuing the writ has a right to inquire into the cause of imprisonment, and ascertain by what authority the person is held within the limits of the state; and it is the duty of the*

marshal, or other officer having the custody of the prisoner, to give, by a proper return, information in this respect. His return should be sufficient, in its detail of facts, to show distinctly that the imprisonment is under the authority, or claim and color of the authority, of the United States, and to exclude the suspicion of imposition or oppression on his part. And the process, or orders, under which the prisoner is held should be produced with the return, and submitted to inspection, in order that the court or judge issuing the writ may see that the prisoner is held by the officer in good faith, under the authority, or claim and color of the authority, of the United States, and not under the mere pretense of having such authority."

An attempt was made, upon other authorities cited, to distinguish the case from Booth's cases, and to *limit* the application of the doctrines established by them; but the court emphatically repudiated any such limitation, as appears by the following explicit language:

"Some attempt has been made in adjudications, to which our attention has been called, to limit the decision of this court in *Ableman* v. *Booth*, and the *United States* v. *Booth*, to cases where a prisoner is held in custody under *undisputed lawful authority of the United States, as distinguished from his imprisonment under claim and color of such authority. But it is evident that the decision does not admit of any such limitation.* It would have been unnecessary to enforce, by any extended reasoning, such as the chief justice uses, the position that when it appeared to the judge or officer issuing the writ that the prisoner was held under undisputed lawful authority, he should proceed no further. No *federal* judge, *even*, could, in such case, release the party from imprisonment, except upon bail when that was allowable. The detention being by admitted lawful authority, no judge could set the prisoner at liberty, except in that way, at any stage of the proceeding. All that is meant by the language used is that the state judge or state court *should proceed no further when it appears, from the application of the party, or the return made, that the prisoner is held by an officer of the United States under what, in truth, purports to be the authority of the United States; that is, an authority, the validity of which is to be determined by the constitution and laws of the United States.* If a party thus held be illegally imprisoned, it is for the courts or judicial officers of the United States, and those courts or officers alone, to grant him release."

The court concludes:

"It follows, from the views we have expressed, that the court commissioner of Dane county *was without jurisdiction to issue the writ of habeas corpus for the discharge of the prisoner in this case, it appearing, upon the application presented to him for the writ, that the prisoner was held by an officer of the United States under claim and color of the authority of the United States,* as an enlisted soldier mustered into the military service of the national government; *and the same information was imparted to the commissioner by the return of the officer.* The commissioner *was, both by the application for the writ and the return to it, apprised that the prisoner was within the dominion and jurisdiction of another government, and that no writ of habeas corpus issued by him could pass over the line which divided the two sovereignties.* The conclusion we have reached renders it *unnecessary to consider how far the declaration of the prisoner as to his age, in the oath of enlistment, is to be deemed conclusive evidence on that point on the return to the writ.*"

Now, the case of the petitioner in this proceeding, except that the officer or agent of the United States having Bayley in charge is

neither a judge, commissioner, nor military officer, acting under the judiciary or military laws of the United States, but a person expressly authorized to act by other statutes of the United States, is precisely in the condition of *Tarble's Case*. The petition of Bayley on its face showed that he *was claimed*, at least, to be held in custody in pursuance of the laws of the United States. It was so explicitly stated in the petition, and a copy of the warrant showing the authority was annexed to and made a part of the petition for the writ; and this being so, if the doctrine asserted in the *Booth* and *Tarble Cases* is correct—and whether correct or not it is controlling in this court—then, in the language of the court in *Tarble's Case*, already quoted, the judge who issued the writ to the petitioner *"was without jurisdiction to issue the writ of habeas corpus for the discharge of the prisoner in this case*, it appearing, upon the application presented to him for the writ, that the prisoner was held by an officer" or agent "of the United States, under claim and color of authority of the United States," as a fugitive from justice, to be delivered over to the authorities of the state of Oregon. But if it were necessary to go further, the petitioner did exactly what the supreme court of the United States said he was bound to do under such circumstances, and made return to the writ showing his authority, giving copies of his commission from the governor of Oregon, and warrant from the governor of California, and return of the chief of police, and exhibited the originals under the seals of the respective states, his authority thus appearing upon the representations of both the petitioner and the party restraining him of his liberty, and this state of facts satisfactorily appeared to the court, for the court itself so adjudged in its judgment for contempt. And the petitioner further did exactly what the supreme court of the United States said he must do—respectfully declined to produce the body of the prisoner. Fortunately, he did not have occasion to go further, as the court said he must do, if necessary, and resist by all the force at his command any attempt to compel a production of his body, other than to defend himself in the courts in response to the writ of *habeas corpus* issued to and served upon him, and in the proceedings for contempt now under consideration.

Now, if it was lawful for petitioner to decline to produce the body of Bayley upon the facts disclosed to the court upon the face of the petition itself, or upon the face of the petition and the return made to the writ; if it was lawful to resist by force, with all the power at his command, any attempt to compel him to produce the body of the prisoner; if, upon the facts of the case appearing, as they did appear, the judge had no jurisdiction to proceed further or examine at all into the regularity of the proceeding under which Bayley was held,—then there certainly was no jurisdiction or lawful authority to force a production of Bayley through proceedings for contempt. The two propositions are incompatible, and their co-existence legally im-

possible. There is strong reason for maintaining this position. If a judge of a state court—another sovereignty as distinct from the national sovereignty as if it ruled over a different territory—can, under the circumstances indicated, compel the production of a prisoner held under the laws of the United States,—the supreme law of the land,—he has the physical power to discharge him when produced, however lawless the discharge may be, as was done, in fact, in the *Booth* and *Tarble Cases*. The production of the body in court, by means of which the court has the physical power to assume control, is equivalent to a surrender of a prisoner. And if one person can be discharged by a state officer, so can all, and it would be impossible for the United States, in some contingencies, to discharge the duty imposed upon them by the national constitution relating to fugitives from justice, as well as to fugitives from labor, or to execute the laws of congress passed to give effect to those constitutional rights of the several states, as between themselves. It would be as difficult to perform their duties as the supreme court in *Booth's Cases* said it would be to execute the criminal laws of the United States under similar conditions.

By producing the body as required by the writ, the petitioner necessarily places his prisoner within the control of the court issuing it, and deprives himself of all power to perform the requirements of his commission, enjoined by the superior authority of the laws of the United States. He cannot, and he does not, owe a divided duty to two distinct sovereignties. He cannot serve two masters. He cannot produce his prisoner, which is equivalent to his surrender, in obedience to the commands of the writ of *habeas corpus*, and at the same time retain power to obey the mandate of the laws of the United States and deliver him to the authorities of the state of Oregon. He must obey one command or the other, and the command to be obeyed is the one which is superior or supreme in its authority. But whether these reasons and others given are sound or not, the rule as to the jurisdiction of the state courts, under the circumstances indicated, appears to us to be clearly established by the highest tribunal in the land, and are not open even to question here, and cannot be disregarded by us.

We are of opinion, under the authoritative decisions cited, that the judge of the superior court on the petition of Bayley, as presented, had no jurisdiction to issue the writ, and certainly, upon the petition and the return made to the writ by Robb, that neither the judge nor the court over which he presides had jurisdiction or authority to proceed further, or to compel the production of the body of Bayley, or to punish him for contempt for respectfully declining to produce the body under the circumstances of the case, in pursuance of the commands of the writ.

We should not have thought it necessary to go into the case so fully, or to have done anything beyond referring to the *Booth* and

*Tarble Cases,* but we found ourselves in the delicate, embarrassing, and very unpleasant position of reaching a conclusion different from that attained by the supreme court of the state in this case, for whose judgment we entertain the very highest respect. That tribunal held, on a writ of *habeas corpus* heretofore issued on petition of Robb, that the superior court had jurisdiction and authority to compel petitioner, by imprisonment for contempt, to produce the body of his prisoner, Bayley, and remanded him to suffer the punishment adjudged by that court. *In re Robb,* 1 Pac. Rep. 881. Had there been no decisions of the supreme court of the United States settling the question, as we conceive there are, we certainly should have hesitated long before declining to follow this ruling of the supreme court of the state. But where that court differs from the supreme court of the United States as to rights depending upon the statutes of the United States, over which the latter court has final jurisdiction, and we must follow one or the other, as we must do in this case, our duty is to yield obedience to the latter. As no reference is made to the *Booth* and *Tarble Cases* in the opinion of the supreme court of the state, those cases may not have attracted the attention of the court.

The prisoner is entitled to be discharged from imprisonment, and it is so ordered.